UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re<br><br>DIANE TACASON,<br><br>Debtor | Docket No. 12-11879<br><br>Chapter 11 |

# JOHN GRAY'S MOTION TO CONVERT TO CHAPTER 7 FOR INABILITY TO CRAFT A FEASIBLE PLAN THAT SATISFIES THE BEST INTEREST OF THE CREDITORS TEST

John Gray ("Gray") requests that this Court convert the Debtor's case to Chapter 7 because based on the Debtor's schedules, operating reports, and representations, there does not exist a feasible Chapter 11 plan that will meet the best interests of the creditors test of 11 U.S.C. § 1129(a)(7)(A)(ii). Alternatively, if the Court believes that the Debtor may be able to draft a confirmable plan, the Court should set a hard deadline to present that plan.

The Debtor's case was converted from Chapter 13 to Chapter 11 on October 16, 2012. Even though the exclusivity period expired on April 14, 2013, see 11 U.S.C. § 1121(e) (180 days for a small business debtor), the Debtor has not yet proposed a plan and disclosure statement to the creditors for consideration.

## A.    The Applicable Standards.

11 U.S.C. § 1112(b)(1) provides "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…." The term "cause" is defined in 11 U.S.C. § 1112(b)(4), and several examples are enumerated, but "cause" is not limited to those items:

> That the itemized grounds are non-exclusive fulfills the Congressional purpose of giving "wide discretion to the court to make an appropriate disposition of the case when a party in interest requests," by allowing the court to "consider other factors as they arise.'" [In re Wallace], 2010 WL 378351, at *2-3 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 405-06 (1977)).

1

In re Hoyle, 10-01484-TLM (Bankr. D. Ohio Jan. 17, 2013). Under this flexible rubric, the inability to produce a Chapter 11 plan is adequate "cause" to convert the Debtor's case to Chapter 7.

The burden of proving that a Chapter 11 meets the factors of § 1129(a) is on the proponent of the plan. See In re Peter Thompson Associates, Inc., 155 B.R. 20, 24 n. 2 (Bankr.D.N.H. 1993). A Chapter 11 plan must propose payment to each of the identified classes such that:

> With respect to each impaired class of claims or interests—
>
> (A) each holder of a claim or interest of such class—
>
> ...
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A)(ii).

## B.     In Chapter 7 liquidation, the Debtor's unsecured creditors will receive $23,754.66.

The Debtor's Schedule A (Exhibit 1) indicates that she own one property valued at approximately $180,000[1]. Schedule D lists encumbrances in the amounts of $185,212.37 for the first mortgage, a second mortgage of $27,934.51, and a condominium lien of $1,692.04. The liens on the property total $214,838.92, significantly in excess of the value of the real estate.

The Debtor's Schedule B (Exhibit 2) indicates that the Debtor has $116,223 in assets at the time of her filing, of which $28,000 is subject to a lien by T.D. Bank, N.A. Schedule C (Exhibit 3) exempts $55,648.34 of that total. Schedule D (Exhibit 4) lists a lien of $42,598 on the $37,000 of the Debtor's industrial machinery and inventory.

---

[1] Zillow estimates that the value of the property is currently approximately $195,000. Exhibit 5.

The amount available for distribution to the Debtor's creditors under Chapter 7 liquidation is therefore:

|  |  |
|---|---|
| Schedule A | $0.00 |
| Schedule B | $116,223.00 |
| Schedule C Exemptions | ($55,648.34) |
| Schedule D[2] Liens | ($37,000.00) |
| **Total** | **$23,754.66** |

The Debtor's unsecured creditors will therefore receive $23,754.66 in Chapter 7 liquidation.

## C.   The Debtor cannot produce a feasible Chapter 11 plan that will meet the best interest of the creditors' test of 11 U.S.C. § 1129(a)(7)(A)(ii).

There does not exist a Chapter 11 plan that meets the best interest of the creditors test of 11 U.S.C. § 1129(a)(7)(A)(ii). The unsecured creditors would receive at least $23,754.66 in total over the duration of any such plan. Even assuming that the plan payments to the general, unsecured creditors are made on a quarterly basis over five years (the longest conceivable period for the Debtor to schedule a plan), it would require 20 equal payments of $1,187.74, or $395.91 per month.

No conceivable configuration of the Debtor's financial obligations can meet this minimum payment. According to the Debtor's schedules, she must make payments on her first mortgage ($1,711.85 per month) and automobile ($358.92 per month). Exhibit 5, Schedule J. Any confirmable plan requires *minimum* payments of $2,466.68 per month.

The Debtor's Operating Reports for the seven months since her case was converted to Chapter 11 (Exhibit 6 (November 2012); Exhibit 7 (December 2012); Exhibit 8 (January 2013); Exhibit 9 (February 2013); Exhibit 10 (March 2013); Exhibit 11 (April 2013); and Exhibit 12 (May 2013)) demonstrate an average monthly net cash flow of merely $30.60, and in many months that amount is negative[3]. Exhibit 13.

Even if the Debtor were to surrender her vehicle and home, there is no way for her to present a confirmable plan. Surrendering these assets will likely

---

[2] To the extent that the Debtor may have equity in her 2012 Toyota Camry, the Debtor likely has sufficient residual exemption under 11 U.S.C. § 522(d)(5) to exempt any positive equity.
[3] At $30.60 per month, it would take the Debtor 65 years to pay the unsecured creditors $23,754.66.

3

bring no funds into the estate because the real estate is underwater and the equity in the vehicle can be exempted. See Exhibit 1; Exhibit 3.

Lastly, if there is any doubt that the Debtor cannot meet the best interest of the creditor's test, the Debtor indicated to the Court through counsel on May 29, 2013, that the summer months are the Debtor's slow season. Given that the Debtor had a negative cash flow in February, March, and May 2013 and her income is expected to decrease, it is unlikely that her monthly cash flow will increase by the amount necessary to make her mortgage, vehicle, and minimum unsecured debt payments without any default. Liquidation is the only viable alternative.

## II.    Conclusion.

For the foregoing reasons, Gray requests that this Court convert the Debtor's case to Chapter 7.

> Respectfully submitted,
>
> JOHN GRAY,
>
> By his attorney,
>
> /s/ Patrick M. Groulx
> Patrick M. Groulx
> Polis Legal
> P.O. Box 760656
> Melrose, MA 02176
> Bar No. NHB07294
> Ph: (978) 549-3124
> Fax: (617) 500-9955
> E-mail: pgroulx@polislegal.com

Date: July 8, 2013

## CERTIFICATE OF SERVICE

On this day, July 8, 2013, I served or caused to be served on the following a true and accurate copy of this motion by ECF:

| | |
|---|---|
| Geraldine Karonis<br>Office of U.S. Trustee<br>1000 Elm Street<br>Suite 605<br>Manchester, NH 03101 | Law Offices of Michael B. Feinman<br>23 Main Street<br>Andover, MA 01810<br>978-475-0080<br>978-475-0852 (fax)<br>mbf@feinmanlaw.com |
| Office of The United States Trustee<br>1000 Elm Street, Suite 605<br>Manchester, NH 03101<br>Phone: (603) 666-7908<br>Facsimile: (603) 666-7913<br>USTPRegion01.MR.ECF@usdoj.gov | Jordan Shapiro<br>Shapiro & Hender Law Offices<br>105 Salem Street<br>Malden, MA 02148 |

/s/ Patrick M. Groulx
Patrick M. Groulx