UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:

DIANE J. TACASON d/b/a
CUTTING EDGE SPORTS
            Debtor

Chapter 11
Case No. 12-11879-BAH

DEBTOR'S PLAN OF REORGANIZATION
DATED AUGUST 14, 2013

## I.  INTRODUCTION.

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Diane Tacason ("Debtor" or "Diane") from cash flow derived from future wages and from the proceeds of the sale of certain business assets.  This Plan provides for 4 classes of secured claims; 1 class of undersecured claims; 2 classes of unsecured claims; and 1 class of equity security holders.  Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued between .843% and 7.11% of their allowed claims.  This Plan also provides for the payment of administrative claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with**

your attorney, if you have one. (If you do not have an attorney, you may wish to

consult one.)

This Plan is filed by the Debtors on a joint basis, but there is no request for the

substantive consolidation of the Debtors. The Debtors rely upon each other and have

certain dependency upon each other, but they remain separate legal entities in this Plan.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01  <u>Class 1</u>.  Hardwood Heights Condo Association ("Hardwood") holds a secured claim against Devtor in the approximate amount of $1,692.04.  This claim is secured by the Debtor's residential real property located in Windham, NH. (the "Property")  The Debtor estimates the current market value of the Property to be approximately $185,000.00.  Hardwood shall be paid its secured claim with interest at the rate of 4.0% in 36 equal monthly installments in the amount of $48.10 each. Hardwood shall retain its prepetition liens to secure the amounts due to it hereunder.  Upon the conclusion of all payments as set forth in the Debtor's Plan, this creditor shall issue a release of lien in proper recordable form within 30 days of the date of final payment, which release shall be delivered to the Debtor.

This claim is impaired.

2.02  <u>Class 2</u>.  Deutsche Bank ("DB") holds a secured claim against the Debtor in the approximate amount of $183,089.19.  This claim is secured first mortgage on the Property.  DB's secured claim shall be paid interest at the contract rate between the parties and over the remaining term as contracted.
Upon the conclusion of all payments as set forth herein, this creditor shall issue a release of lien in proper recordable form within 30 days of the date of final payment, which discharge shall be delivered to the Debtors.

This claim is unimpaired.

2.03  <u>Class 3</u>.  America's Servicing Company ("ASC") holds a wholly undersecured mortgage claim against the Debtor in the approximate amount of $27,551.58.  This claim is evidenced by a second mortgage on the Property.  This entire claim shall

be treated as an unsecured claim in Class 7 of this Plan. The mortgage held by ASC shall be deemed avoided and discharged. The Debtors may record a certified copy of this Plan and the Confirmation Order with the appropriate Registry of Deeds to accomplish the same.

This claim is impaired.

2.04   Class 4.   Toyota Financial Services ("TFS") is the holder of a secured claim against the Debtor. The total claim is in the approximate amount of $19,666.00, secured by a security interest in the Debtor's 2012 Toyota Camry, and supported by the value of the vehicle. TFS's secured claim shall be paid interest at the contract rate between the parties and over the remaining term as contracted.

Upon the conclusion of all payments as set forth herein, this creditor shall issue a release of lien in proper recordable form within 30 days of the date of final payment, which discharge shall be delivered to the Debtors.

This claim is unimpaired.

2.05   Class 5.   TD Bank ("TD") is the holder of a secured claim against the Debtor. The total claim is in the approximate amount of $42,598.00, secured by a security interest in the Debtor's business asssets. This claim is evidenced by a fourth mortgage on the Property. This entire claim shall be treated as an unsecured claim in Class 7 of this Plan. The mortgage held by Pentucket shall be deemed avoided and discharged. The Debtors may record a certified copy of this Plan and the Confirmation Order with the appropriate Registry of Deeds to accomplish the same.

TD's secured claim shall be paid interest at the contract rate between the parties and over the remaining term as contracted. Upon sale of the business assets of the Debtor, the buyer shall assume this outstanding debt and the Debtor shall be released from any further obligation therefor.

This claim is impaired.

2.06   Class 6.   Administrative Convenience. All unsecured claims in the allowed amount of $1,000.00 or less shall be paid in cash on the Effective Date and amount equal to $250 or 100% of their claims, whichever is less.

This class is impaired.

2.07   Class 7.        General Unsecured Claims.   The claims of the general unsecured creditors total approximately $884,431.22, comprised of claims against Diane, including the claims of John Gray.  Each holder of an allowed Class 7 claim shall be paid a monthly dividend, on a pro rata basis, of such allowed claims over a period of 36 months in order to pay an anticipated dividend in the amount of between .843% and 7.11%, depending upon the allowance of claims.  The Class 7 payment shall total $207.00 per month, regardless of the amount of the actual dividend paid to creditors.  Such payments shall commence within sixty (60) days of the Effective Date and end after 36 monthly payments with a payment of the balance upon the close of the 60th month.  No interest shall be paid or accrue to the benefit of the holders of Class 7 claims.

Any holder of a claim in this class holding a claim which is not allowed as of the date for distribution will not receive a distribution pending the resolution of the allowance of such claim.  If such a claim is disallowed, the distribution held for such creditor shall be distributed pro-rata to creditors holding allowed unsecured claims.

This class is impaired.

2.07   Class 8.        The claims of equity security holders in the Debtors shall remain unimpaired, with the holders of equity claimholders retaining their interests.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   Unclassified Claims.   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   Administrative Expense Claims.   Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid upon terms of treatment consistent with §1129(a)(9)(C) of the Code.   Such claims include:

a.    The State of New Hampshire is owed $2,172.90 for taxes and shall be paid interest at 4.0% with this secured claim amortized over a 5 year period. Monthly payments shall commence within 30 days of the Effective Date in the amount of $40.02.

b.    The Internal Revenue Service is owed $111.22 for taxes.  This shall be paid in a single payment within 30 days of the Effective Date in the amount of $111.22.

3.04    United States Trustee Fees.   All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

4.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03    Settlement of Disputed Claims.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

5.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor has no such contracts or leases.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

1.      *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Plan payments will be funded from the sale of assets provided herein, as well as the future wages of the Debtor, to be paid for 36 months as provided in Exhibits B and C. At the conclusion of the 3 year term of the Plan, plan payments will terminate.  All Plan payments will be made by the Debtor.

2.      *Sale of Business Assets*

Pursuant to the terms of the documents attached hereto and collectively marked as Exhibit D, Diane intends to sell all of her business assets, both tangible and intangible, to a Massachusetts corporation, R&S Designs Corporation ("R&S"). R&S is a corporation wholly owned by Scott Crowther and Rachel Welker. Rachel Welker is now and has been a long time employee of the debtor. She has no employment agreement or any restrictions on her employment. As the debtor expressed an interest in selling the business because of inadequate capital, Rachel Welker and Scott Crowther expressed an interest in the purchase of the business with the condition of continued employment of the debtor on going forward basis. The full terms of the proposed transaction are set forth in the executed transaction documents referenced herein.

Based upon information available to the debtor, there should be no tax liability to the estate as a result of this transfer the debtor will no longer be involved in the management of the business other than as a consultant, and will provide assistance to the new business primarily in the form of sales and services. There are no other costs to the debtor or this estate associated with this transaction except as provided herein. In

-6-

Based upon information available to the debtor, there should be no tax liability to the estate as a result of this transfer the debtor will no longer be involved in the management of the business other than as a consultant, and will provide assistance to the new business primarily in the form of sales and services. There are no other costs to the debtor or this estate associated with this transaction except as provided herein. In

3.    *Post-confirmation Management*

On a Post-Confirmation basis, Diane will not be the owner of CES, but will manage business tasks as requested by the new owners and continue to manage her own personal affairs.

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|--------------|----------------------|----------|--------------|
| Diane Tacason | Employee | Yes | Employee | $1,200 per week |

There are no other insiders to receive compensation.

## ARTICLE VII
## GENERAL PROVISIONS

7.01   <u>Definitions and Rules of Construction.</u>   The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: [Insert additional definitions if necessary].

7.02   <u>Effective Date of Plan.</u>   The effective date of this Plan is the thirtieth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03   <u>Severability.</u>   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## ARTICLE VIII
## DISCHARGE

Discharge.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B).

## ARTICLE X
## OTHER PROVISIONS

None.

WHEREFORE, the Debtors respectfully request that the Plan herein be confirmed pursuant to 11 U.S.C. Section 1129(b).

Respectfully submitted,

The Debtor
By her attorney,

Dated: August 14, 2013

_____
Michael B. Feinman
BBO#545935
Feinman Law Offices
23 Main Street
Andover, MA  01810
Tel:  978-475-0080
Fax: 978-475-0852
Email:mbf@feinmanlaw.com

Dated: August 14, 2013

_____
Diane Tacason