**2014 BNH 016 Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

                                                    Bk. No. 12-11879-BAH
                                                    Chapter 7

Diane J. Tacason,
                    Debtor


*Michael B. Feinman*
*Feinman Law Offices*
*Andover, MA*
*Attorney for the Debtor*

*Michael S. Askenaizer*
*Law Offices of Michael S. Askenaizer*
*Nashua, NH*
*Attorney for the Chapter 7 Trustee*

*Geraldine Karonis*
*Office of the U.S. Trustee*
*Manchester, NH*
*Assistant United States Trustee*


# MEMORANDUM OPINION

## I.  INTRODUCTION

        The Court has before it the Application for Allowance of Reimbursement of Fees and

Expenses (Doc. No. 280) (the "Fee Application") filed by counsel for the Debtor, Attorney

Michael B. Feinman and the Feinman Law Offices ("Feinman" or "Attorney Feinman").   Both

the Chapter 7 Trustee, Michael Askenaizer, and the United States Trustee, William K. Harrington

("UST") have objected to the relief sought in the Application.   In the Fee Application, Attorney

Feinman asks the Court to award his law office fees and reimbursement of expenses for work performed for the Debtor, both while this case was pending under chapter 13, and for the Debtor-in-possession, while this case was pending under chapter 11.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).   This is a core proceeding in accordance with 28 U.S.C. § 157(b).


## II.  FACTS

The facts necessary to determine the appropriate fee and expense award to Attorney Feinman are not in dispute.   The Debtor filed this bankruptcy case on June 8, 2012 under chapter 13.   Attorney Feinman, pursuant to 11 U.S.C. § 329, disclosed that he had received $11,719 in compensation from the Debtor in the year preceding the filing of the petition.   In her statement of financial affairs, the Debtor disclosed that Attorney Feinman had been paid a retainer of $12,000.

After the first 341 meeting was held, the chapter 13 trustee filed a motion to dismiss the case alleging that the Debtor was over the unsecured debt limit permitted in chapter 13 under 11 U.S.C. § 109(e).   The limitation applicable at the time was $360,475 of noncontingent, liquidated, unsecured debts.   Schedule F, as initially filed on the petition date, showed that the Debtor owed $390,395.70 of unsecured debt.   After an initial hearing on the trustee's motion to dismiss, the Court afforded the Debtor an opportunity to amend her schedules, dismiss the case, or convert to chapter 11.   See August 24, 2012 Order.   The Debtor filed amended schedules that showed unsecured debts of $329,254.27 on Schedule F and unsecured debts on Schedule D of $40,436.92.

2

After a second hearing, the Court[1] determined that the schedules on their face showed the Debtor to be over the unsecured debt limit and ineligible for chapter 13.   It ordered the case dismissed if not converted by October 19, 2012.   See October 5, 2012 Order.

The Debtor chose the latter option and, on October 16, 2012, converted this case to chapter 11.   The Debtor did not file an application to employ counsel until September 12, 2013, almost a year after the case had been converted to chapter 11.    During that time, Attorney Feinman had continued to perform legal services for the Debtor.   In her application to employ Attorney Feinman as debtor's counsel, the Debtor sought after-the-fact relief that would have allowed her to compensate Feinman for the work he did from October 2012 to September 2013.   The UST and a creditor objected.   The Court denied the application to employ to the extent it sought after-the-fact relief, but without prejudice, to afford the Debtor an opportunity to clearly articulate a basis why such relief was appropriate.   The Court approved the employment of Attorney Feinman effective September 12, 2013 (the date the employment application was filed).   See September 16, 2013 Order.

On December 31, 2013, the Court converted the case from chapter 11 to chapter 7.   By the end of the chapter 11 case, the Debtor had proven unable to provide adequate disclosures to support a plan of reorganization.   The most substantive accomplishment during the chapter 11 case was the consummation of a section 363 sale of substantially all of the debtor's non-exempt assets for approximately $65,000 which, after payment of secured claims against the assets, yielded $20,000 to the estate.

On January 28, 2014, Attorney Feinman filed the Fee Application.   In the Fee Application he sought compensation for the entire case up to conversion to chapter 7, without separating the

---

[1] At this point, the case was in front of Judge Deasy.

3

fees and expenses attributable to the chapter 11 and chapter 13 phases of the case or mentioning that his employment by the chapter 11 debtor-in-possession was not authorized until September 2013.   In total, Attorney Feinman requested $75,790 in fees and $2,654.82 in expenses. Additionally, Feinman reported that he had received a retainer of $18,130, which he had applied in its entirety to services rendered during the chapter 13 case.   The amount of retainer reported in the Fee Application was different than the $11,719 reported in Attorney Feinman's section 329 statement at the outset of the case.   At the time of the Fee Application, the Court had not authorized Feinman to apply any amount of his retainer or authorized the provision of any post-petition retainer amounts.

Both the UST and Chapter 7 Trustee objected to the Fee Application.   The UST argued for the reduction of fees incurred during the chapter 13 case, given that the Debtor was ineligible for that chapter when the case was filed.   The UST also asked the Court to deny all fees and expenses for that period of the chapter 11 case before the Court approved the Debtor's retention of Attorney Feinman as debtor's counsel.   The UST pointed out that although the Court had only denied employment for that period of time without prejudice, the Debtor had never renewed her request for retroactive employment of counsel.

In addition, the UST requested that the Court discount the fee award for the chapter 11 case because Attorney Feinman failed to address basic concerns of the parties and the Court during the time when the Debtor was attempting to get a disclosure statement approved and trying to close a section 363 sale.   The UST argued that these failures resulted in wasted time on the part of Attorney Feinman.   Finally, the UST argued that inaccurate reporting of attorney compensation and the application of retainer without court approval deserved some reduction in any fee award to Attorney Feinman.   The Chapter 7 Trustee's objection raised the same general points, but also

4

added that in light of the estate's clear insolvency, the Court should conduct an independent review of the value of all of the legal services provided by Attorney Feinman to the estate.

After a hearing, the Court ordered Attorney Feinman to file a supplement to the Fee Application to explain the inconsistency between the Fee Application and the section 329 statement and to otherwise address the objections of the trustees.   After this first supplement ("First Supplement") was filed, the Court held another hearing.   In the First Supplement, Feinman attempted to clarify the issues surrounding the amount of the retainer and its application to outstanding fees and expenses.   He stated that the retainer had not actually been applied; that it was all still in his client trust account, and that the Fee Application had been in error insofar as it implied any application of retainer.   Attorney Feinman was not able to provide a definitive explanation for the difference between the retainer disclosed in the section 329 statement and the retainer disclosed in the Fee Application.[2]   Rather, he ascribed the difference to three possible factors: (1) pre-petition legal services performed for the Debtor unrelated to the bankruptcy, (2) a $2,000 payment made just prior to the bankruptcy filing, or (3) a data entry error.   Attorney Feinman also renewed his request for after-the-fact employment to the date of the conversion to chapter 11 and asserted that he ought to be paid as outlined in the Fee Application.   Finally, Attorney Feinman provided a breakdown of the fees he was seeking by chapter and segregated the fees he was requesting for the period of time during the chapter 11 case when the Court had not approved his employment.

The Court was not satisfied with Attorney Feinman's explanations in the First Supplement. Based on the Court's own review and the review of the trustees, the First Supplement raised more

---

[2] He was able to explain the difference between the retainer reported in the section 329 statement and the retainer reported in the statement of financial affairs.   The retainer reported in the section 329 statement of $11,719 was less than the $12,000 amount reported in the SOFA by the amount of the $281 filing fee required for chapter 13.

questions than it answered, most importantly with respect to the amount of the pre-petition retainer.   The Court ordered Attorney Feinman to file a second supplement and the Chapter 7 Trustee and UST were afforded an opportunity to respond.

The second supplement ("Second Supplement") was filed on May 12, 2014.   Attorney Feinman took this opportunity to correct several errors that had been included in the First Supplement, including an incorrect reference to the petition date and an inaccurate value in the chapter-by-chapter fee breakdown.   Counsel also clarified an error in the amount charged for photo copy expenses.

Unfortunately, Attorney Feinman's further attempt to explain the pre-petition retainer he had received from the Debtor ended up adding more confusion to the situation.   He referred to significant work done on behalf of the Debtor, beginning in July of 2010.   He then stated that the Debtor had provided him with a retainer of $18,765—not $11,719 or $18,130, as he had previously reported—"pursuant to the Court's Order of June 8, 2011," a date well before the petition date in this bankruptcy case.   Also, for the first time, Attorney Feinman disclosed that he had accepted $750 from the Debtor after the conversion to chapter 7.

Shortly after Attorney Feinman filed the Second Supplement, the UST sought an extension of time both for him and the Chapter 7 Trustee to respond.   They had additional questions for the Debtor and Attorney Feinman based on the content of the Second Supplement and were engaging in some informal discovery.   The Court approved this extension.

Two weeks later, the Chapter 7 Trustee sought a second extension of time for him and the UST to file a response, with the Debtor's assent.   The informal discovery had revealed further issues and the trustees were awaiting further document production.   The Court approved this second extension.

On June 10, 2014, Attorney Feinman filed an Amended Affidavit (Doc. No. 305), an Amended Disclosure of Compensation (Doc. No. 307)—on Official Form B203—and a Rule 2016(b) Supplement (Doc. No. 306).   In the Affidavit, Attorney Feinman disclosed that his pre-petition retainer had been $10,000, and that he had provided a $2,000 "courtesy credit" to the Debtor, for a total of $12,000.   He also disclosed that the Debtor had paid him an additional $5,500 since the case had been filed and before conversion to chapter 7.

In the Amended Official Form B203, Feinman again disclosed a pre-petition retainer of $10,000, with $15,000 received from the Debtor as of the date of the filing of Amended Form B203.   This statement was apparently inconsistent with the disclosures made in the Affidavit (Doc. No. 305)—$10,000 retainer with $5,500 received post-petition.

In his last filing of June 10, 2014—the Rule 2016(b) Supplement—Feinman explained in more detail how he was being compensated for representing the Debtor in various adversary proceedings, and disclosed more details about the additional payments his office received from the Debtor during the chapter 11 case.   Feinman also, at last, appeared to provide an arithmetically sound explanation for the differences in the amount of pre-petition retainer reported.

Feinman disclosed that he had received $5,500 from the Debtor at some time before the conversion to chapter 7.   According to the 2016(b) Supplement, his office staff received the funds and deposited them into his client trust account.   Feinman did not personally become aware of the funds until after he had filed the Fee Application and its supplements.   Upon discovering this payment, Feinman was able to provide an explanation for the confusion about the amount of his pre-petition retainer:

| **Amount Paid** | **When Received** | **Feinman's Explanation** |
|---|---|---|
| $10,000 | Pre-petition. | This was the actual pre-petition retainer amount. |
| $2,000 | N/A | This does not actually represent a payment. This amount represents a courtesy reduction in fees by the firm. It was recorded in the firm's records as a "credit." |
| $5,500 | Post-petition, during the chapter 11 case. | Not a pre-petition retainer but an unauthorized, post-petition retainer. The amount was erroneously described as a pre-petition retainer in the Fee Application. |
| $630 | Post-petition, during the chapter 7 case. | Some of the amount received during the chapter 7 case. |
| **TOTAL:** | **$18,130** | This was the pre-petition retainer reported in the Fee Application. |

Additionally, in the 2016(b) Supplement, Feinman reported that his office had received $1,000 from the Debtor on January 15, 2013 that, rather than being placed into the client trust account, was placed into the office "petty cash" account and used to pay stenographer's fees—without Court approval.   Feinman also disclosed that he had received $2,250 in total from the Debtor post-conversion to the chapter 7 case.

After these revelations, the UST filed a third request for an extension of time for him and the chapter 7 trustee to file responses to Feinman's various fee application supplements; Feinman's filings on June 10, 2014 had raised additional questions that the trustees needed to investigate.   The Court granted this request.

The trustees filed their responses without further need for an extension.   They each reiterated their previous requests, highlighted the inconsistencies discussed above, and made one

8

entirely new disclosure that had not been previously made in any filings with the Court.   This new disclosure was that during a meeting on June 9, 2014 with the UST and Chapter 7 Trustee, Attorney Feinman revealed that on December 3, 2012 he had taken $4,000 from the client trust account he had set up for the Debtor and placed these funds into his office operating account.   On June 5, 2014, a few days before the meeting with the trustees, Feinman replaced these funds into the Debtor's client trust account.   Based on their further investigation, the trustees made essentially three requests: (1) that all fees and expenses incurred by Attorney Feinman be denied for the period during the chapter 11 case when his employment had not been approved, (2) that the failure to accurately disclose a retainer merited a significant reduction in fees, and (3) that application of client funds without Court approval also merited a significant reduction in fees.

Attorney Feinman filed a rebuttal to each trustee's response.   He admitted the facts as recounted above, and provided some further explanation.   Feinman discussed certain errors that he had made in the Second Supplement.   When he reported the pre-petition retainer as $18,765 that was a typographical error, not an intentionally different recitation of the facts of the case. Also, the reference to the "Court's order of June 8, 2011" was an error—there had been no such order.

Attorney Feinman also admitted that he had filed the Fee Application without a proper, thorough review of the details of the accounting of fees incurred in this case.   He stated that various administrative errors had worked together to produce the confusion about the pre-petition retainer and post-petition payments received from the Debtor.   He also sought to assure the Court and the trustees that he had hired an accountant to review his office procedures for handling client funds.

9

For the first time, Feinman himself also disclosed to the Court the transfer of the $4,000 of client funds from the Debtor's client trust account to his office's operating account. He explained that the transfer happened as a result of confusion when the case converted from chapter 13 to chapter 11. The transfer was not discovered until the review of the Fee Application with the trustee.

After the parties had finished making their submissions to the Court, the Court took the matter under advisement.

## III.  DISCUSSION

The Court will address the fee award for each stage of the case separately and then discuss appropriate sanctions.

### A.    Fees for the Chapter 13 Phase

By the Court's calculation, Attorney Feinman has requested $21,252.50[3] in fees for the chapter 13 phase of this case ("Total Chapter 13 Billings").   Both the UST and Chapter 7 Trustee have requested the Court perform a detailed review of the Billing Statement with respect to the Total Chapter 13 Billings.   The UST has requested that all fees incurred in relation to the chapter 13 trustee's motion to dismiss be disallowed given that the Debtor was ineligible for chapter 13 under section 109(e) when the petition was filed.

11 U.S.C. § 330(a)(4)(B) governs the allowance of fees to debtor's counsel in a chapter 13 case.   This section provides:

---

[3] When discussing the dollar amount of fees, the Court refers to the detailed billing statement ("Billing Statement") attached to the Fee Application.   The Total Chapter 13 Billings include the .4 hours incurred on February 13, 2012 up to and including the 1.10 hours incurred on October 16, 2012.   Billing Statement at 1-3.

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The "other factors" are set forth in section 330(a)(3)(A)-(F) and (4)(A).   In full, these sections provide:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
> > (A) the time spent on such services;
> > (B) the rates charged for such services;
> > (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> > (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> > (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> > (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for--
> > (i) unnecessary duplication of services; or
> > (ii) services that were not--
> > (I) reasonably likely to benefit the debtor's estate; or
> > (II) necessary to the administration of the case.

The Court uses the lodestar method to award fees.   The first step is for the court to determine the appropriate hourly rate and number of productive hours spent.   The product of these two numbers will be the starting point.   Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 69 (1st Cir. 2012) ("Under the lodestar method, a court determines a fee award by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure.")

11

(quotations omitted); In re Graham, 2013 BNH 002 at 5 (2013).  Lodestar also contemplates a flexible approach which can involve a court altering the hourly rate to a reasonable one, cutting a fee award by a lump sum, or docking fees for certain activities performed.  In re Sullivan, 674 F.3d at 69 ("When computing the number of hours productively spent, the court should discount time spent on unnecessary, duplicative, or overworked tasks."); In re Little, 484 B.R. 506, 511 (B.A.P. 1st Cir. 2013) ("The court need not follow a rigid prescription when reducing fees; it may either eliminate specific hours or reduce the overall fee award to a reasonable amount.").

Here, the Court does not have an issue with—and the trustees did not object to—the hourly rates charged, ranging from $350 per hour for Feinman to $250-275 for his associates.  The Court does, however, find merit in the UST's objection to fees for services related to chapter 13-specific matters where the Debtor was ineligible for chapter 13 relief.  Under section 330(a), these services were not reasonably likely to benefit the debtor at the time Feinman and his firm rendered them.

Section 109(e) provides that "only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475[4] . . . may be a debtor under chapter 13 of this title."  This Court's interpretation of the section 109(e) unsecured debt limitation is set forth in In re Smith.  In Smith, the Court explained that because of the language of section 109(e), "chapter 13 eligibility is determined on the petition date" and "the Court begins its section 109(e) analysis with the [d]ebtor's bankruptcy petition."  In re Smith, 325 B.R. 498, 502 (Bankr. D.N.H. 2005) (citation omitted).  The Court does not go beyond the petition "as long as a debtor's schedules are completed after the exercise of a reasonable level of diligence and are filed in good faith."  Id.

---

[4] The amount in effect on the petition date.

Additionally, in <u>Smith</u> the Court adopted the reasoning of courts that use a section 506(a) analysis in determining the amount of secured and unsecured debts for the purpose of determining eligibility under section 109(e).   The effect of this reasoning is that the Court will add the undersecured portion of scheduled secured debts on Schedule D to the unsecured debts on Schedule F to come up with the total amount of unsecured debt.   <u>Smith</u>, 325 B.R. at 502.   This is the approach that the majority of courts take.   <u>In re Rios</u>, 476 B.R. 685, 690 (Bankr. D. Mass. 2012) (following "the Fourth, Seventh, Eight[h], and Ninth Circuits and a majority of bankruptcy courts in utilizing 11 U.S.C. § 506(a) to bifurcate claims listed as secured on the petition date into secured and unsecured portions for determining § 109(e) eligibility.").

As summarized above, the Debtor filed this case with unsecured debts over the eligibility limit on Schedule F.   The Court then permitted the Debtor to amend her schedules once, as Attorney Feinman thought there were errors that inaccurately inflated the amount of unsecured debt.   When the Debtor amended the Schedules, the unsecured debt on Schedule F was below the eligibility limit—but the deficiency claims on Schedule D still made the Debtor ineligible for chapter 13.   At the second hearing on eligibility for chapter 13, on October 5, 2012, Attorney Feinman offered no sound legal argument as to why the reasoning in <u>In re Smith</u> should not control the Debtor's eligibility.   Indeed, at this hearing the Court also pointed out that even if it looked beyond the amended schedules to the proofs of claim on file, the Debtor was even further over the debt limit.

The Court finds that the services Feinman rendered on matters specific to chapter 13 were not reasonably likely to benefit the estate.   The Debtor's schedules both as initially filed and as amended showed that the Debtor was ineligible for chapter 13.   As explained above, this Court's standards for chapter 13 eligibility are clear when the schedules are completed diligently and in

13

good faith.   Neither Feinman nor anyone else has suggested that the schedules here were prepared

otherwise.   It was unreasonable for Feinman to expend significant time and effort on a chapter 13

filing when the Debtor was patently ineligible for that chapter.   Feinman has defended this

decision by arguing that it was reasonable to attempt to file a chapter 13 first given the more costly

nature of chapter 11.   While the Court is not unsympathetic to the burden of cost that chapter 11

places on individual debtors, the cost argument does not allow a debtor to ignore the eligibility

requirements of section 109(e).

Feinman also argues that "[p]rimarily, the claim that caused the review of the case for

jurisdictional limits was the claim of John Gray, a claim which was reduced to a judgment by the

state court, but which is subject to a pending appeal."   First Supplement at 2.   The Court notes

that during the October 5, 2012 hearing Feinman admitted that no appeal was then pending.   At

best, this argument underscores the disputed nature of the John Gray judgment, which does not

take the debt outside the unsecured debt ceiling for section 109(e) purposes—only unliquidated

and contingently scheduled debts are excluded.   Indeed, this is what the Court found at the

October 5 hearing, and, apparently, the Debtor and Feinman never thought otherwise, as the John

Gray judgment debt was scheduled only as disputed and not contingent or unliquidated.   Under

the analysis of <u>Smith</u> and other similar decisions, Attorney Feinman should have realized the

Debtor was ineligible for chapter 13, based on the schedules which he helped prepare.

For these reasons, the Court shall disallow fees for the chapter 13-specific items in the

billing statement.   The Total Chapter 13 Billings amount to $21,252.50.   The Court calculates

the sum of chapter 13-specific items on the billing statement to be $5,390.[5]   These items include

---

[5] <u>See</u> Appendix 1, attached.   The items highlighted on pages 1 through 3 of Appendix 1 are the fee items disallowed as either chapter 13-specific or bankruptcy-unrelated.

legal services relating to the chapter 13 plan, 341 meeting, dealing with the chapter 13 trustee's motion to dismiss, and conversion of the case to chapter 11. None of these items were reasonably necessary for the benefit of the estate at the time they were rendered.

The Court will also disallow two items from the Billing Statement dated May 30, 2012 and May 31, 2012 that appear to be unrelated to the bankruptcy case. These items were not explained in the Fee Application or any of the responses or supplements. These fee items amount to $2,282.50. Accordingly, the Total Chapter 13 Billings shall be reduced by the sum of the chapter 13-specific items and the bankruptcy-unrelated items on the Billing Statement. The total allowed fees for chapter 13 shall be $13,580. Expense reimbursement for this period shall be allowed, less the chapter 13 filing fee of $281.

> B.      Fees for the Chapter 11 Phase—Pre-employment

Attorney Feinman is asking for fees for the period of the chapter 11 phase of the case before the Court authorized his employment by the bankruptcy estate. A chapter 11 debtor's general bankruptcy counsel must be employed pursuant to 11 U.S.C. § 327 before being compensated under section 330(a), so the Court must consider this issue first.

The standard for approving after-the-fact employment applications is set out in In re Jarvis, 53 F.3d 416 (1st Cir. 1995). In Jarvis, the First Circuit Court of Appeals rejected the "excusable neglect" standard for considering employment of a professional person after that professional person has already rendered services. Rather, the Jarvis court opted for an "extraordinary circumstances" standard. The Jarvis court set out a two-part analysis: "The applicant must demonstrate both the professional person's suitability for appointment and the existence of extraordinary circumstances sufficient to excuse the failure to file a timely application." Id. at 420. Here, the Court is not aware of any reason Feinman or his firm would be unsuitable for

15

employment. His retention application adequately set forth the qualifications of Feinman and his firm, and no party objected on these grounds. Accordingly, the Court finds that Feinman would have been eligible for employment at the onset of the chapter 11 case, and will move on to the second part.

The extraordinary circumstances standard for after-the-fact employment applications requires a court to use "its informed discretion [and] decide whether the particular circumstances attendant to the application are sufficiently extraordinary to warrant after-the-fact approval." Id. The Jarvis court recommended bankruptcy courts consider several factors when making the decision, including

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; [and] the extent to which compensation to the applicant will prejudice innocent third parties....

Id. (quoting F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.), 844 F.2d 99, 104 (3rd Cir. 1988)). Jarvis also explicitly holds that "tardiness occasioned merely by oversight cannot qualify as extraordinary circumstance under the second prong." Jarvis, 53 F.3d at 418.

Attorney Feinman did not formally renew his request for after-the-fact employment until the First Supplement. Feinman gave this discussion short shrift in the First Supplement, choosing to simply incorporate by reference the arguments he had made in the original application to employ, filed in September 2013. This was the same application to employ that the Court had denied without prejudice to the extent it sought after-the-fact approval of employment, so that Feinman could give the topic a more fulsome discussion at a later date. In the September 2013 application, Feinman stated that he had neglected to file an application to employ at the outset of the chapter 11 case because the case had originally been pending in chapter 13, a chapter under

16

which debtor's counsel does not need to obtain court approval to represent the debtor.   Once the
case converted to chapter 11 there was a "flurry of activity" that caused Feinman to forget to seek
court approval for his employment.   Doc. No. 195, Memorandum of Law at 2.   Feinman argues
that these circumstances come within the Court's discretion under Jarvis for after-the-fact
employment approval.

Feinman cites the Bankruptcy Appellate Panel's decision Shamban v. Meyer (In re
Meyer), No. MB 99-025, 1999 WL 35128696 (B.A.P. 1st Cir. Sept. 9, 1999), in support of his
argument.   In Meyer, the court seized upon Jarvis's lead and set out a number of additional factors
that a court might consider in exercising its "informed discretion" to determine whether
extraordinary circumstances exist.   Feinman insists that the additional Meyer factors apply to his
situation and that the Court should rely on them to approve his after-the-fact employment.

The Court finds the Meyer case entirely distinguishable from the situation at hand.   In
Meyer, the estate had a surplus so that all the unsecured creditors would be paid notwithstanding
whether the attorney seeking after-the-fact employment was paid at all.   Meyer, 1999 WL
35128696 at *4.   Here, the estate is administratively insolvent, even if the Court discounts the
amount it has already disallowed for the chapter 13 phase of the case.   At the hearing on the Fee
Application on May 7, 2014, the Chapter 7 Trustee reported that the estate had approximately
$15,000 on hand.   Feinman is seeking fees in excess of $75,000, so even with the pre/post-petition
retainers of $15,500, the estate will be administratively insolvent.   One of the Meyer factors is
that "no actual or potential prejudice will inure to the estate or other parties in interest" if
after-the-fact employment is approved.   Id.   Here, approving Feinman's employment
after-the-fact will directly prejudice creditors of the same or lower priority in payment as Feinman.

17

A second <u>Meyer</u> factor was that no parties in interest object to the after-the-fact employment.[6]

Here, both the Chapter 7 Trustee and UST strenuously object.   The final relevant <u>Meyer</u> factor is

"the applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the

employment of professionals."   <u>Id.</u>   While the Court does not have any reason to believe that

Feinman was cavalier about seeking judicial approval for the employment of professionals in the

past, in this case he has demonstrated a consistent lack of attention to detail with respect to the

requirements of the Bankruptcy Code involving the employment and compensation of

professionals embodied in 11 U.S.C. §§ 327, 329, and 330.   <u>See</u> <u>infra</u>.   In <u>Meyer</u>, there was no

evidence that the attorney had been anything but compliant with the other requirements of the

Bankruptcy Code relating to the employment and compensation of professionals.   Accordingly,

the result in <u>Meyer</u> does not apply to the facts of the present case.

Feinman has not met his burden to demonstrate extraordinary circumstances that would

permit this Court to exercise discretion and approve after-the-fact employment.   The substance of

his excuse for failing to timely seek approval of his employment—confusion and a "flurry of

activity" during the conversion from chapter 13 to chapter 11—amounts to nothing more than

excusable neglect.   Under <u>Jarvis</u>, the Court cannot approve after-the-fact employment on these

facts.   Because the Court disapproves Feinman's request for after-the-fact employment, it must

disallow all compensation for the relevant period of time.   The Court has calculated the total fees

requested for the pre-employment phase of the chapter 11 case to be $39,752.50.[7]   This amount

and any expenses[8] incurred during this period will be disallowed.

---

[6] In <u>Meyer</u>, the court noted that "all creditors have affirmatively consented" to the fees requested.   <u>Id</u>. at *5.
[7] These are the items in the Billing Statement from the top of page 4 through the penultimate entry, dated 9/11/2013, on page 7.
[8] <u>See</u> Appendix No. 2.   The highlighted expenses are disallowed.

C.      Appropriate Sanctions

Up to this point, the Court has discussed fees permitted under section 330(a) for the chapter 13 phase of the case and whether any compensation can be awarded Feinman on account of the pre-employment period of the chapter 11 case.   Now, the Court must address an appropriate sanction for Feinman's failure to comply with 11 U.S.C. §§ 329 and 330, as well has how that sanction impacts whatever fees the Court awards for the rest of Feinman's service to the Debtor and the estate.

Section 329(a) governs debtor's counsel's duty to disclose its compensation arrangement with the debtor to the court and to the other parties to a case.   In full this section reads:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a).   Rule 2016(b) implements section 329.   It requires that "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code."   If the fee arrangement changes, debtor's counsel must file a supplement within 14 days "after any payment or agreement not previously disclosed." Finally, before counsel may apply any funds held in a client trust account, the court must authorize such application.   11 U.S.C. § 330(a)(1)(A) ("After notice to the parties in interest and the United States Trustee and a hearing . . . the court may award to . . . a professional person employed under section 327 . . . reasonable compensation for actual, necessary services rendered.")

19

The Bankruptcy Court has a "fundamental responsibility to monitor the integrity of the proceedings before it."   In re Martin, 817 F.2d 175, 180 (1st Cir. 1987).   An essential part of maintaining this integrity is the prompt, accurate, and complete disclosure of fee arrangements between debtor and counsel.   See Id. at 182 ("There must be at a minimum full and timely disclosure of the details of any given arrangement."); In re Ind. Engineering Co., Inc., 197 F.3d 13, 17 (1st Cir. 1999) (discussing the requirements of section 329); In re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991) ("Counsel's fee revelations must be direct and comprehensive.   Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient.").

Failure to disclose fee arrangements prevents a court from discharging its duty to review and approve all compensation to debtor's counsel under sections 329 and 330.   Such a failure is sanctionable.   In re Ind. Engingeering, 197 F.3d at 17 ("Upon finding that counsel has failed to comply, the bankruptcy judge can impose various remedies, including disqualification of counsel and the denial of fees."); Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 880 (9th Cir. 1995) ("Failure to comply with the disclosure rules is a sanctionable violation, even if the proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Code Rule.").   In re Saturley, 131 B.R. at 517 ("Because it fosters the potential to frustrate meaningful inquiry by the court and others, failure to file the Rule 2016 statement can be, in and of itself, grounds for denying counsel any compensation.").

Throughout the course of this case, Feinman has demonstrated a pattern of failing to properly disclose his fee arrangement with the Debtor and has on more than one occasion both accepted additional funds from the debtor-in-possession and used those funds without the approval

of this Court.    Over the course of the disclosures made in the Fee Application, First Supplement, Second Supplement, various affidavits and statements, and finally in response to the Chapter 7 Trustee and UST objections to the Fee Application, the Court was told a varying story about payments Feinman received from the Debtor.    First, at the filing of the petition, Feinman claimed his retainer was $11,719.    Then, he claimed in the Fee Application to have on hand a retainer of $18,130, which he stated had already been applied.    In the First Supplement, he clarified that the retainer had not been applied, but that he could not definitively explain why it was so much greater than the amount previously reported.    In the Second Supplement, Feinman stated that the retainer was actually $18,765 (later revealed to be a typo), but still could not explain the difference. Finally, in the filing of an affidavit and 2016(b) supplement, Feinman revealed that (1) the actual retainer had been $10,000; (2) the office had prospectively reduced fees charged to the Debtor by $2,000 and recorded that as a credit, and (3) the office had accepted either $5,000 or $5,500 since the filing of the petition that had been reported as a pre-petition retainer in the Fee Application. These disclosures took place over a period of approximately six months, several hearings, and over the dozen filings by the Debtor, and both the UST and Chapter 7 Trustee.

Additionally, Feinman disclosed that on two occasions he did not sequester the Debtor's funds in a client trust account.    The first instance was the $4,000 that was removed from the trust account in December 2012.    The second instance was the $1,000 that Feinman accepted from the Debtor to pay costs in January 2013, and which was never deposited into the client trust account to begin with.    The Court construes both of these instances to be violations of section 330(a): Feinman applied client funds, without court approval.

Feinman asserts that no harm was done in either instance.    With respect to the $4,000, the transfer was unintentional and was reversed immediately upon discovery.    As to the $1,000, it

was immediately paid to a stenographer on behalf of the Debtor.   These explanations do not satisfy the Court.   Feinman only discovered the transfer of the $4,000 after the investigation of the trustees was well under way in June 2014 and over a year after it was made.   Feinman did not immediately notify the Court upon discovering this information.   Rather, he made various filings on June 10, 2014 that did not mention it.   The trustees were the parties who first apprised the Court of the transfer.   As to the $1,000, Feinman should have placed it into his client trust account and only removed it once the Court had approved reimbursement of expenses, after notice and a hearing.

The Court in Quality Respiratory Care, Inc., confronted a similar situation in which debtor's counsel filed a fee application disclosing retainer payments for the first time, without having first filed a section 329 statement.   In re Quality Respiratory Care, Inc., 157 B.R. 180, 181 (Bankr. D. Me. 1993).   Debtor's counsel, without court approval or any disclosure, had been accepting post-petition payments from the debtor and keeping them as a "retainer."   The court disallowed all fees and required counsel to disgorge the retainer payments, without finding actual harm to the estate.   The court noted that "the case law does not require any actual harm" as a condition precedent to a sanction.   Id. (citing In re Saturley, 131 B.R. 509).   Other courts have imposed severe sanctions on debtor's counsel for failing to comply with the rules relating to disclosure of compensation.   See e.g., In re Park-Helena Corp., 63 F.3d at 882 (affirming bankruptcy court's denial of all fees to counsel who had failed to disclose the source of compensation received in connection with the bankruptcy); In re Gay, 390 B.R. 562, 576 (Bankr. D. Md. 2008) (reducing fees by $10,000 for counsel's failure to disclose receipt of over $40,000 of client funds during bankruptcy case).

Here, the Court feels a substantial sanction is required.   Each time Attorney Feinman disclosed more information about the retainer payments he had received, the reality of the situation became less clear.   There is no doubt that this has been a convoluted and hotly contested case, having been in three separate chapters and involving multiple adversary proceedings.   This convolution is no excuse for failing to abide by the provisions of the Bankruptcy Code and Rules.

Indeed, there are additional items which the Court feels exacerbate the disclosure violations.   When Feinman first filed the Fee Application it was rife with misleading statements beyond the inaccuracies relating to the retainer payments.   It did not identify that Feinman's employment by the estate had not been approved for a period for which he was requesting compensation.   The Fee Application also did not break out fees between chapter 13 and chapter 11.   Then there are the various typographical errors in the First and Second Supplements—references to the incorrect petition date, misstatements of the amount of the retainer, and citing a non-existent court order.   In an isolated pleading such typographical errors, while undesirable, are only unfortunate.   But, when the errors are material, indeed the very heart of the subject pleading, they demonstrate a lack of adequate care for the process.

These misstatements and errors, when taken against the whole backdrop of lackadaisical disclosure, are independently sanctionable.   It is essential that counsel be accurate in fee applications the first time; here, it required at least four separate attempts.   "The Court and other parties-in-interest 'should not be required to ferret out facts' which the [r]ules required [c]ounsel to 'openly and timely disclose.'"   In re Gay, 390 B.R. at 570 (quoting In re TJN, Inc., 194 B.R. 400, 402-403 (Bankr. D.S.C. 1996).

### D. Fee and Expense Award

The Court has already reduced fees for the chapter 13 and chapter 11 phases of this case, leaving a net fee request of $28,365. These fee reductions were independent of the various sanctionable actions just discussed, and the Court shall further reduce the total fee award accordingly. For the reasons set forth in the previous section, the Court shall award $14,706 on account of the fees requested. This represents a sanction in the amount of $13,659, or approximately 50% of the remaining total net fee request. The Court will not require Attorney Feinman to disgorge any funds he has in his trust account.

The Court must now address allowed reimbursement for expenses. The Court has previously denied reimbursement of expense for the chapter 13 filing fee and all expenses incurred during the period in which Feinman's employment by the debtor was not authorized. The Court will allow reimbursement of all other expenses requested for the chapter 13 phase, which the Court has calculated to be $545.40. The Court will allow reimbursement of all expenses Feinman incurred during the post-employment chapter 11 phase of the case, but reduce the copy expenses incurred during that period by half. In the Second Supplement, Feinman acknowledged that he had charged twice the amount allowed by this Court's standing administrative order for copy expenses—20 cents per page, as opposed to 10 cents. AO 2016-1(b)(1). The Court shall allow a total of $248.60 in reimbursable expenses for the chapter 11 phase.[9]

## IV. CONCLUSION

For all the reasons set forth above, the Court shall allow $14,706 in fees and $794 in expenses. This opinion constitutes the Court's findings of fact and conclusions of law in

---

[9] See Appendix No. 2. Highlighted expenses are disallowed.

accordance with Federal Rule of Bankruptcy Procedure 7052.   The Court will issue a separate

order consistent with this opinion.

     ENTERED at Manchester, New Hampshire.


Date:   December 31, 2014                    /s/ Bruce A. Harwood
                                            Bruce A. Harwood
                                            Chief Bankruptcy Judge

# Feinman Law Offices

The Northmark Bank Building
69 Park Street
Andover, MA 01810
Telephone: (978) 475-0080
Fax: (978) 475-0852

January 19, 2014

Client Numer: 3268

Matter Number: 05014

Diane J. Tacason
67 Stacey Circle
P.O. Box 914
Windham, NH 03087

INVOICE: 16135

## *BALANCE SUMMARY*

Prepaid Funds Available                                      $18,130.00

# Chapter 11

## *PROFESSIONAL SERVICES*

| | | | | | |
|---|---|---|---|---|---|
| 02\|13\|2012 | MBF | E-mail communication with client concerning pre bankruptcy planning. | 0.40 hrs @ 350 | /hr | 140.00 |
| 05\|30\|2012 | MBF | Review of recent suit filed in NH; Discussion with client and commence preparation of documents for bankruptcy filing. | 2.70 hrs @ 350 | /hr | 945.00 |
| 05\|30\|2012 | SPS | Review all documents received from counsel regarding new Superior Court Action filed in NH; Office conference with MBF and with client to discuss same including multiple telephone conferences with client; Telephone conference with opposing counsel; Telephone conference with Attorney Phipps; Telephone confernece with Attorney Dickison; Legal research and commence drafting of oppositions to be filed in Superior Court should bankruptcy not be filed by client. | 3.30 hrs @ 275 | /hr | 907.50 |
| 05\|31\|2012 | SPS | Office conference with client; Legal research regarding applicable statutes on temporary restraining order. Legal research regarding | 5.00 hrs @ 275 | /hr | 1,375.00 |

Tacason, Diane J.                                                                                    Page    2
3268        -  16,135

| | | matters pertaining to preparation for pleadings to file with the court; Drafted opposition to plaintiff's request for injunctive relief; Drafted Motion to vacate temporary restraining order; Travel to Rockingham County Superior Court to file pleadings and conducted __ with opposing counsel at court house pending disposition of said motions. | | | |
|---|---|---|---|---|---|
| 06\|05\|2012 | MBF | Office conference with client to review bankruptcy schedules; Execution of same. | 2.30 hrs @ 350 | /hr | 805.00 |
| 06\|08\|2012 | MBF | Arrange for filing of bankruptcy petition with court. | 0.60 hrs @ 350 | /hr | 210.00 |
| 06\|08\|2012 | MBF | Finalize pleadings for filing with court. | 4.00 hrs @ 350 | /hr | 1,400.00 |
| 06\|08\|2012 | MBF | Telephone conference call with clerk; Prepare for filing Motion for Expedited Determination as to use of cash collateral. | 1.00 hrs @ 350 | /hr | 350.00 |
| 06\|11\|2012 | MBF | Arrange for serving Notice of Hearing on appropriate parties regarding upcoming Motions. | 0.40 hrs @ 350 | /hr | 140.00 |
| 06\|11\|2012 | MBF | Commence preparation of draft of Chapter 13 Plan. | 1.10 hrs @ 350 | /hr | 385.00 |
| 06\|12\|2012 | MBF | Finalize Chapter 13 Plan; Arrange for execution and filing of same. | 1.20 hrs @ 350 | /hr | 420.00 |
| 06\|13\|2012 | MBF | Prepare order approving use of cash collateral for filing with court. | 0.60 hrs @ 350 | /hr | 210.00 |
| 06\|13\|2012 | MBF | Prepare for and attend scheduled hearing at court on Motion for Use of Cash Collateral. | 3.80 hrs @ 350 | /hr | 1,330.00 |
| 06\|13\|2012 | MBF | Office conference with client to review Chapter 13 Plan and execution of same. | 1.40 hrs @ 350 | /hr | 490.00 |
| 06\|24\|2012 | MBF | Preparation of pleadings seeking to avoid wholly unsecured liens on primary residence; Arrange for filing with court. | 3.80 hrs @ 350 | /hr | 1,330.00 |
| 06\|25\|2012 | MBF | Preparation of further motion for use of cash collateral. | 2.40 hrs @ 350 | /hr | 840.00 |
| 07\|01\|2012 | MBF | Finalize and arrange for filing second Motion for Use of Cash Collateral. | 0.80 hrs @ 350 | /hr | 280.00 |
| 07\|02\|2012 | MBF | Amend matrix, arrange for same to filed with court. | 0.30 hrs @ 350 | /hr | 105.00 |
| 07\|05\|2012 | MBF | Prepare for filing with court proposed orders avoiding various liens. | 0.60 hrs @ 350 | /hr | 210.00 |
| 07\|16\|2012 | MBF | Receive and review order granting Use of Cash Collateral and diary new Motion and Hearing dates. | 0.50 hrs @ 350 | /hr | 175.00 |
| 07\|23\|2012 | MBF | Prepare for and attend scheduled meeting of | 3.20 hrs @ 350 | /hr | 1,120.00 |

Tacason, Diane J.                                                                          Page     3
3268        - 16,135

|  |  | creditors at Manchester. |  |  |  |
| --- | --- | --- | --- | --- | --- |
| 07\|25\|2012 | MBF | Prepare for filing with court second motion for use of cash collateral. | 1.60 hrs @ 350 | /hr | 560.00 |
| 08\|06\|2012 | MBF | Review of Motion to Dismiss; Prepare for filing with court opposition to same. | 1.20 hrs @ 350 | /hr | 420.00 |
| 08\|10\|2012 | MBF | Prepare for filing with court Opposition to Motion for Relief from Stay. | 1.40 hrs @ 350 | /hr | 490.00 |
| 08\|10\|2012 | MBF | Review of Motion for Relief from Stay by John Gray; Prepare opposition for filing with court regarding same. | 2.30 hrs @ 350 | /hr | 805.00 |
| 08\|12\|2012 | MBF | Prepare for filing with court objection to Motion to Dismiss Chapter 13 case. | 1.00 hrs @ 350 | /hr | 350.00 |
| 08\|13\|2012 | MBF | Review & Review order granting Use of Cash Collateral and diary new Motion and Hearing dates. | 0.50 hrs @ 350 | /hr | 175.00 |
| 08\|14\|2012 | MBF | Prepare for filing with court Motion to Continue Hearing on Relief from Stay Motions. | 0.20 hrs @ 350 | /hr | 70.00 |
| 08\|16\|2012 | MBF | Receive and review reply and affidavits concerning Relief from Stay Motion. | 1.30 hrs @ 350 | /hr | 455.00 |
| 08\|24\|2012 | MBF | Prepare for and attend hearing at court on Motion to Dismiss. | 3.50 hrs @ 350 | /hr | 1,225.00 |
| 09\|03\|2012 | MBF | Prepare amended Schedules D and F; Motion and related pleadings for client's signature and filing. | 1.30 hrs @ 350 | /hr | 455.00 |
| 09\|04\|2012 | MBF | Review of proposed order granting Relief from Stay; Followup e-mail to plaintiff's counsel concerning modifications and additional items. | 1.10 hrs @ 350 | /hr | 385.00 |
| 09\|06\|2012 | MBF | Review of client, amend bankruptcy schedules; Arrange for same to be executed and filed with court. | 1.60 hrs @ 350 | /hr | 560.00 |
| 09\|29\|2012 | MBF | Review of file; Prepare adversary complaint against John Grey and Jordan Shapiro. | 2.10 hrs @ 350 | /hr | 735.00 |
| 10\|05\|2012 | MBF | Receive and review court order relative to dismissal or conversion of case. | 0.30 hrs @ 350 | /hr | 105.00 |
| 10\|08\|2012 | MBF | Finalize adversary complaint for filing against John Grey and others. | 1.20 hrs @ 350 | /hr | 420.00 |
| 10\|10\|2012 | MBF | Office conference with client to discuss and review adversary proceedings and debt limitations issues affecting bankruptcy strategy. | 1.40 hrs @ 350 | /hr | 490.00 |
| 10\|16\|2012 | MBF | Office conference with client; Review case and prepare Motion to Convert Case; Prepare Motion to Convert Case to proceedings under Chapter 11. | 1.10 hrs @ 350 | /hr | 385.00 |

Tacason, Diane J.                                                                                    Page        9
3268          - 16,135

| Date | | Description | | |
|---|---|---|---|---|
| 12\|04\|2013 | MBF | Office conference with client to discuss and review pending matters. | 0.80 hrs @ 350 /hr | 280.00 |
| 12\|05\|2013 | MBF | Review of Pleadings and Objections and Motions filed on behalf of John Grey. | 1.20 hrs @ 350 /hr | 420.00 |
| 12\|06\|2013 | MBF | Prepare and forward correspondence to court for Voting Certificate and documents for court review. | 1.60 hrs @ 350 /hr | 560.00 |
| 12\|16\|2013 | MBF | Prepare for and attend scheduled hearing at court on various motions. | 4.60 hrs @ 350 /hr | 1,610.00 |
| 12\|16\|2013 | MBF | Prepare draft order approving sale; Circulate same by e-mail. | 1.20 hrs @ 350 /hr | 420.00 |
| 12\|31\|2013 | MBF | Arrange for payment through e-mail communications with secured lender for payoff figure. | 1.50 hrs @ 350 /hr | 525.00 |
| 12\|31\|2013 | MBF | File Affidavit of Sale with Court. | 1.00 hrs @ 350 /hr | 350.00 |
| 01\|17\|2014 | MBF | Preparation of Fee Application. | 2.70 hrs @ 350 /hr | 945.00 |

Total Professional Services:          75,790.00

| Timekeeper ID | Time Spent | Applicable Rate | Amount |
|---|---|---|---|
| MBF | 192.00 hrs | 351.82 \hr | $67,550.00 |
| SPS | 28.60 hrs | 275.00 \hr | $7,865.00 |
| TAT | 1.50 hrs | 250.00 \hr | $375.00 |
| | 222.10 hrs | | $75,790.00 |

## *DISBURSEMENTS*

| Date | Code | Description | Amount |
|---|---|---|---|
| 06\|01\|2012 | CO | copies | 5.25 |
| 06\|01\|2012 | PO | Postage | 9.45 |
| 06\|08\|2012 | CO | copies | 21.00 |
| 06\|08\|2012 | FF | Filing fee paid to court | 281.00 |
| 06\|08\|2012 | PO | Postage | 9.45 |
| 06\|13\|2012 | CO | copies | 28.75 |
| 06\|13\|2012 | PK | Parking | 4.00 |
| 06\|13\|2012 | PO | Postage | 14.95 |
| 06\|25\|2012 | CO | copies | 6.25 |
| 06\|25\|2012 | PO | Postage | 34.50 |
| 07\|16\|2012 | MS | Certification | 64.50 |
| 08\|24\|2012 | PK | Parking | 4.00 |
| 09\|06\|2012 | CO | copies | 2.50 |
| 09\|06\|2012 | FF | Filing fee paid to court | 30.00 |
| 09\|06\|2012 | PO | Postage | 0.45 |
| 09\|06\|2012 | PO | Postage | 0.45 |
| 10\|10\|2012 | FF | Filing fee paid to court | 293.00 |
| 10\|11\|2012 | CO | copies | 5.00 |

Tacason, Diane J.                                                          Page      10
3268          -  16,135

| 10\|11\|2012 | PO | Postage | 11.90 |
| 10\|16\|2012 | FF | Filing fee paid to court | 765.00 |
| 12\|03\|2012 | CO | copies | 3.00 |
| 12\|03\|2012 | PO | Postage | 1.35 |
| 12\|17\|2012 | PK | Parking | 4.00 |
| 12\|24\|2012 | CO | copies | 1.25 |
| 12\|24\|2012 | PO | Postage | 0.45 |
| 01\|12\|2013 | CO | copies | 10.00 |
| 01\|12\|2013 | MS | Westlaw | 100.00 |
| 03\|14\|2013 | PK | Parking | 4.00 |
| 06\|13\|2013 | MS | Westlaw | 50.00 |
| 06\|14\|2013 | CO | copies | 5.25 |
| 06\|14\|2013 | PO | Postage | 1.32 |
| 07\|08\|2013 | PK | Parking | 2.00 |
| 07\|11\|2013 | CO | copies | 34.50 |
| 07\|11\|2013 | PO | Postage | 15.18 |
| 08\|13\|2013 | CO | copies | 220.00 |
| 08\|14\|2013 | PO | Postage | 46.40 |
| 08\|21\|2013 | PK | Parking | 17.00 |
| 08\|22\|2013 | CO | copies | 5.00 |
| 08\|22\|2013 | PO | Postage | 9.20 |
| 09\|04\|2013 | CO | copies | 1.50 |
| 09\|04\|2013 | PO | Postage | 0.92 |
| 09\|09\|2013 | CO | copies | 10.00 |
| 09\|09\|2013 | MS | Westlaw | 50.00 |
| 09\|11\|2013 | CO | copies | 7.50 |
| 09\|11\|2013 | MS | Westlaw | 60.00 |
| 09\|12\|2013 | CO | copies | 25.00 |
| 09\|12\|2013 | PO | Postage | 9.20 |
| 11\|11\|2013 | CO | copies | 285.00 |
| 11\|11\|2013 | PO | Postage | 54.40 |
| 11\|25\|2013 | MS | Court Costs | 30.00 |

Total Disbursements:          $2,654.82